Case 1:22-cv-00215-DLF   Document 1   Filed 01/26/22   Page 1 of 8

The United States Court for the District of Columbia, Washington DC
Edmund Awah v. MedStar Washington Hospital Center Corporation, Case #

# IN THE UNITED STATES COURT FOR THE DISTRICT OF COLUMBIA
# WASHINGTON DC

EDMUND AWAH
P O Box 9803
Silver Spring, MD 20916

3210 Norbeck Road, Apartment 128
Silver Spring, MD 20906

      Plaintiff

Case: 1:22-cv-00215 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 1/26/2022
Description: Pro Se Gen. Civ. (F-DECK)

v.

WASHINGTON HOSPITAL CENTER CORPORATION    *   Case #:
110 IRVIN STREET, N. W.
WASHINGTON DC 20010

Serve on:

The Corporation Trust, Inc.,
2405 York Road, Suite 201
Lutherville, Timonium, MD 21093-2264

      Defendant

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND PRAYER FOR JURY TRIAL

1. Edmund Awah, *in pro se,* submits this Complaint and Request for Jury Trial, alleging as true the following:

### PARTIES

2. The Plaintiff, Edmund Awah is a resident of Montgomery County, Maryland.

3. The Defendant, MedStar Washington Hospital Center Corporation ("MedStar" hereinafter) is a healthcare delivery system carrying on its vocation in the Washington Metropolitan Area, including Montgomery County, Maryland as well as in counties in Virginia. At all times alleged, MedStar was a participating hospital pursuant to 42 USC § 1395cc because

The United States Court for the District of Columbia, Washington DC
Edmund Awah v. MedStar Washington Hospital Center Corporation, Case #

(a) it had signed an agreement with the Secretary of Health and Human Resources to participate in the federal Medicare program; (b) it is a Level I Trauma Center, the largest independent academic medical center in Washington D.C., an acute care teaching hospital and regional referral center which maintains its principal offices at 110 Irving Street, N. W. Washington, DC 20010; (c) has a dedicated emergency department that offered a comprehensive range of impatient and outpatient medical and surgical services, including emergency care, trauma care, and adult surgical services.

## JURISDICTION AND VENUE

4. The Emergency Medical Treatment & Labor Act ("EMTALA" hereinafter) was enacted by Congress in 1986 to ensure public access to emergency services regardless of ability to pay. The allegations articulated in the Complaint pertain to the violations of EMTALA.

5. This claim presents a federal question (EMTALA) for which this Court has concurrent and/or pendent jurisdiction; CJP § 1-501, see also *R. A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 382 Md. 689, 696-97 (2004), *Felder v. Casey*, 487 U.S. 131 (1988).The Maryland Malpractice Act does not apply to the conduct alleged in the instant EMTALA claim, *see Brooks v Maryland General Hosp., Inc.*, 996 F. 2d. 708 (D. Md. 1993)("we hold that the Maryland Malpractice Act does not apply to cover the conduct alleged as the basis for [an] EMTALA claim."), therefore there is no state-mandated condition precedent to seek arbitration before filing this claim. *Id.* at 713.

6. The venue as well as the jurisdiction are proper.

The United States Court for the District of Columbia, Washington DC
Edmund Awah v. MedStar Washington Hospital Center Corporation, Case #

## STATEMENT OF FACTS

7. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 6, as if fully set forth herein:

8. On February 06, 2020 at about 5.00 pm EST, Plaintiff was operating his taxicab en route to pick up a customer in Southeast Washington DC. As Plaintiff was southbound on Fifth Street SE crossing the intersection between Fifth Street SE and East Capitol Street SE, another vehicle, traveling at a high rate of speed, westbound on East Capitol Street SE, failed to stop at the 2-way Stop Sign (at Fifth Street SE and East Capitol SE) and crashed into Plaintiff's taxicab with an extraordinary amount of force.

9. Even though restrained by the Taxicab's safety belt, Plaintiff was pushed around the taxicab by the various forces generated upon the fiery crash impact. Plaintiff suffered sharp whiplash pain in the neck area and lower back. Plaintiff's forehead also hit the steering wheel as the taxicab's airbags failed to deploy. Plaintiff's limbs and torso came into forceful contact with the consul and several items within the interior of the taxicab and this resulted in several injuries to Plaintiff's limbs and torso. DC Metropolitan Police appeared on the scene and Plaintiff was eventually transported by ambulance to the MedStar Washington Hospital Center located at 110 Irving Street, Washington DC 20010.

10. En route to the hospital, Plaintiff started developing a series of panic attacks. The paramedics triaged Plaintiff en route to the hospital, taking such readings as temperature and blood pressure. Upon arrival at the hospital, Plaintiff was requested by the emergency room staff ("ER staff", hereinafter) to wait in the lobby. It was a long wait. Plaintiff waited for more than an hour to be attended to, even though Plaintiff had made it clear to the ER staff that Plaintiff was in severe pain due to the crash injuries. Next, the ER staff wanted to know

Case 1:22-cv-00215-DLF   Document 1   Filed 01/26/22   Page 4 of 8

The United States Court for the District of Columbia, Washington DC
Edmund Awah v. MedStar Washington Hospital Center Corporation, Case #

of Plaintiff's health insurance status. Plaintiff informed the ER staff that Plaintiff had no health insurance. At that point, the level of service by the ER staff changed abruptly.

11. The emergency room staff immediately stopped following the routine triage procedures such as interviewing Plaintiff, taking Plaintiff's weight, height to evaluate Plaintiff's medical status. Plaintiff was not even given the opportunity to describe Plaintiff's symptoms regarding the extent and severity of Plaintiff's injury and the resulting bodily pain.

12. Defendant MedStar Washington Hospital Center failed to follow its own standard screening procedures and medical protocols used in evaluating automobile crash victims, who normally experience a high risk of bone, tendon and muscle fractures and dislocations. Defendant failed to allow Plaintiff to lie on a bed for a proper and thorough examination of Plaintiff's injuries and associated pain. Plaintiff remained seated throughout all the time Plaintiff stayed at the hospital.

13. Defendant MedStar Washington Hospital Center failed to perform standard evaluative screening and stabilizing treatment tests such as electrocardiogram (ECG); X-rays; Computerized tomography (CT) scan and Medical Imaging Technique (MRI) scan, all standardized diagnostic tests in evaluating and treating automobile crash victims. These tests would have discovered all possible bone or muscle injuries as well as any possible damage to herniated disc, severe injuries resulting from whiplash and possible injuries to organs such as the brain, liver, heart and the nerves. Defendant MedStar Washington Hospital Center would have provided the foregoing services to patients with a health insurance coverage. Plaintiff was treated differently from insured patients in similarly situated situation, simply because Plaintiff did not have health insurance.

Case 1:22-cv-00215-DLF   Document 1   Filed 01/26/22   Page 5 of 8

The United States Court for the District of Columbia, Washington DC
Edmund Awah v. MedStar Washington Hospital Center Corporation, Case #

14. Even though Plaintiff complained about the severe bodily pain especially in the neck and lower back areas, Defendant MedStar Washington Hospital Center provided no pain killer medications to Plaintiff throughout the over 2 hours long stay at the hospital. After handing over a pain medication prescription to Plaintiff, Plaintiff was eventually discharged with the same level of pain Plaintiff arrived with at the ER. Plaintiff did make the almost 30 miles one and a half hours trip home back to Montgomery County, Maryland, all along suffering from the excruciating pain.

15. Upon arriving home, Plaintiff was still suffering from the following symptoms: (a) indescribable fear; (b) trembling; (c) shaking; (d) sweating; (e) shortness of breadth and chills as a direct consequence of the panic attack, in addition to the excruciating pain around the neck and lower back areas. Plaintiff was compelled to take a double dose of a sleeping sedative in order to calm himself down and to eventually fall asleep. The panic attack symptoms continued for a few more days, albeit with decreasing effect.

16. The emergency staff (ER) did not triage Plaintiff. Indeed, the emergency room staff did not interview Plaintiff to evaluate Plaintiff's medical status before Plaintiff was admitted and discharged. The ER staff failed to properly screen Plaintiff before and after admission. Further Plaintiff was not stabilized before discharge. This caused Plaintiff to suffer a range of severe medical problems from the crash injuries pain as well as the panic attacks Plaintiff suffered, as articulated in the foregoing paragraphs.

17. Defendant MedStar Washington Hospital Center failed to follow their own standard screening and stabilization procedures as well as standard diagnostic medical screening protocols with regards to the emergency room response to Plaintiff's automobile crash injuries. This violated EMTALA and the violation led to an excruciating pain from the automobile crash

Case 1:22-cv-00215-DLF   Document 1   Filed 01/26/22   Page 6 of 8

The United States Court for the District of Columbia, Washington DC
Edmund Awah v. MedStar Washington Hospital Center Corporation, Case #

injuries to the debilitating panic attack symptoms. The EMTALA violation further directly caused Plaintiff to suffer massive costs, severe emotional distress, mental angst, anguish, body disfigurement, loss of consortium, panic migraines, fearful thoughts and embarrassment, etc.

18. There must be no doubt that the failure of Defendant to administer the proper and standardized screening and stabilization pursuant to EMTALA was solely because Plaintiff did not have health insurance coverage. The moment Defendant got the information that Plaintiff did not have health insurance was the moment Defendant decided not to administer proper care, in clear violation of EMTALA.

## COUNT I
## EMTALA VIOLATION

Plaintiff incorporates by reference the allegations in paragraphs 1 through 18 as if fully set forth herein.

19. On February 06, 2020 Plaintiff was transported by ambulance to the MedStar Washington Hospital Center, located at 110 Irvin Street, NW Washington DC 20010, after an automobile accident. Once the ER staff became aware that Plaintiff did not have health insurance coverage, the ER staff elected not to perform routine evaluation procedures and triage screening to establish the medical status of Plaintiff. Routine weight, height and heart function evaluation as well as a number of diagnostic scans and other procedures were not performed.

20. Due to lack of health insurance, Plaintiff received disparate medical treatment by the ER staff as aforementioned in the foregoing paragraphs because any other patient with similar severe automobile crash injuries and/or exhibiting panic attack symptoms but having health insurance coverage, would have been properly and appropriately screened in a format consistent with Defendant's standard screening and treatment regimen. Such a patient would have been

Case 1:22-cv-00215-DLF   Document 1   Filed 01/26/22   Page 7 of 8

The United States Court for the District of Columbia, Washington DC
Edmund Awah v. MedStar Washington Hospital Center Corporation, Case #

properly triaged by blood pressure, temperature, weight, height and heart function measurements.

21. Upon admission to the ER, a health insurance carrying patient would have been administered with a pain killer medication without any delay, as other routine procedures are put in place. Such a patient with health insurance would undergo an X-ray examination as well as CT and MRI scans to check for any bone or organ damage. Further, the said patient would have been admitted for a number of days for observation and evaluation of his/her response to treatment, until the patient is finally stabilized. Plaintiff was never accorded any beneficial screening and treatment simply because Plaintiff did not have health insurance coverage.

22. Defendant failed to administer the appropriate and medically necessary routine screening and evaluation to prevent pain and the material deterioration of Plaintiff's panic attack symptoms, see e.g,. 42 USC § 1395dd(b)(1)(B) and 1395dd(c), and COMAR 30.08.05.07. Defendant MedStar Washington Hospital Center's failure to provide immediate medical attention to Plaintiff, because Plaintiff did not have health insurance coverage, was reasonably be expected to result and did in fact result in:

(i) placing Plaintiff's health in serious jeopardy;

(ii) serious impairment to bodily function; and

(iii) serious dysfunction of any bodily organ or part. 42 U.S.C. § 1395 dd(e)(1)(A).

23. As a direct and proximate cause of all of the above, inclusive of the disparate medical screening and/or treatment, Plaintiff had to endure painful bouts of pain and panic attacks which made Plaintiff severely ill. Defendant's conduct was deliberate, wanton, malicious and with reckless disregard for the welfare and well being of Plaintiff.

24. The Plaintiff has suffered and will continue to suffer: pain and suffering, multiple

bouts of panic attacks, mental anguish, severe emotional distress, disfigurement and humiliation or embarrassment associated with the disfigurement, medical and other expenses reasonably and necessarily incurred in the past and that with reasonable probability, may be expected in the future, loss of earnings in the past and such earnings or reduction in earning capacity with reasonable probability may be expected in the future, inconvenience, physical impairment, and other non-pecuniary injuries and damages.

WHEREFORE, Plaintiff requests that the Court award Plaintiff a judgment in the amount in excess of $75,000 plus costs, pre- and post-judgement interest as well as punitive damages and any other relief for damages as deemed fair and just.

Respectfully submitted,

### REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial on all claims.

Edmund Awah
P O Box 9803
Silver Spring, MD 20916
Tel: 240 970 0424
Email: robertgrant2053@yahoo.com

*Plaintiff in pro se*